# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CR-20034-ALTONAGA

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID F. LEE,

    Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO COMPEL [ECF NO. 287]

THIS CAUSE is before the Court on Defendant, David F. Lee's ("Defendant" or "Mr. Lee"), Motion to Compel, filed November 11, 2022 [ECF No. 287] (the "Motion"). In the Motion, Defendant moves to compel the Attorney General to comply with the Court's July 27, 2022 Order, in which the Court ordered that the Attorney General hospitalize Mr. Lee at a suitable facility to restore his competency to proceed in the instant legal proceedings pursuant to Title 18, United States Code, Section 4241(d) [ECF No. 202] (the "Competency Order"). The Motion was referred to the undersigned by the Honorable Cecilia M. Altonaga, Chief United States District Judge, to take all necessary and proper action as required by law. [ECF No. 305]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing, the pertinent portions of the record, and all relevant authorities. The Court also heard from the parties, through counsel, as well as representatives from the Federal Bureau of Prisons ("BOP"), at a Zoom hearing before the undersigned on December 21, 2022.

For the reasons that follow, and as explained on the record, the undersigned recommends that the Court deny the relief requested in the Motion.

## I. BACKGROUND

Defendant was arrested on November 17, 2020, and charged by way of a Criminal Complaint on November 18, 2020, with attempted bank robbery. [ECF Nos. 1 and 2]. Defendant was indicted on January 14, 2021 [ECF No. 9], and, after a three-day jury trial, on February 18, 2022, Defendant was convicted of attempted bank robbery. [ECF No. 100]. Defendant has remained in the custody of BOP since his arrest in November 2020.

Defendant's sentencing was scheduled for May 4, 2022. *Id*. However, indicating he was dissatisfied with his attorney at the time, on March 25, 2022, Defendant requested that his attorney move to withdraw [ECF No. 116]. On April 20, 2022, the Court (United States District Judge Marcia Cooke[1]) appointed new CJA counsel, Henry Bell, to represent Defendant. [ECF No. 130]. Mr. Bell is Defendant's current counsel of record.

Notably, prior to and since his trial, Defendant has engaged in a pattern of filing numerous notices, motions, and letters to the Court in the Court's electronic docketing system on a variety of topics.

On June 16, 2020, after Defendant sought to proceed pro se, counsel for Defendant requested that the Court hold a competency hearing, and on July 25, 2022, the Court held an evidentiary hearing on the issue of Defendant's competency. [ECF Nos. 159, 196]. On July 27, 2022, the Court issued an order finding that Defendant is not competent to proceed to a *Faretta* colloquy and sentencing in this matter. [ECF No. 202]. The Court further ordered,

---

[1] United States District Judge Marcia Cooke was the presiding Judge in this case until July 21, 2022, when the case was reassigned to Chief United States District Judge Cecilia Altonaga. [ECF No. 195].

2

pursuant to 18 U.S.C. § 4241(d), that Defendant be committed to the custody of the Attorney General to be treated and evaluated at a suitable hospital facility for a period of time, not to exceed four months, to determine whether there is a substantial probability that he will attain the capacity to permit the proceedings to go forward. *Id*.

Pursuant to the Competency Order, the United States has periodically filed reports with the Court regarding Defendant's status. Those reports show that Defendant remains at FDC-Miami and is not being treated, and that, although he has been designated to the Federal Medical Center ("FMC") in Butner, North Carolina, for forensic evaluation and treatment for competency restoration, BOP has indicated that it will not be transferring Defendant to FMC-Butner, or any other suitable facility, until March 2023.

On November 11, 2022, nearly four months after the Court's Competency Order, Defendant, through counsel, filed the Motion now before the Court requesting the Court order the Attorney General to hospitalize Defendant at a suitable facility within seven days for the purpose of evaluating and restoring his competency to proceed in this case. [ECF No. 287]. In the Motion, Defendant's counsel argues that the delay in transferring Defendant to a medical facility violates 18 U.S.C. § 4241(d), the Court's Competency Order, and Defendant's due process rights. On November 21, 2022, the United States filed a Response to the Motion, and on November 22, 2022, Defendant filed a Reply. [ECF Nos. 297, 303]. On December 19, 2022, the United States filed a Notice of Supplemental Authority Regarding Defendant's Motion to Compel. [ECF No. 338].

The Motion is fully briefed and ripe for adjudication.

On December 21, 2022, the Court held a Zoom hearing on the Motion. Counsel for the parties and representatives of BOP were all present.

## II. MATTERS ADDRESSED AT THE HEARING

As indicated above, the parties, through counsel, appeared before the undersigned, by Zoom, for a hearing to address Defendant's Motion and to hear from BOP regarding the reasons for the delay at issue in the Motion. BOP representatives were present, including BOP counsel, Hayley Milczakowski, and Dr. Dia Boutwell.

At the hearing, counsel for the United States and BOP representatives explained that the delay in transferring Defendant from FDC-Miami, where he is currently confined, to FMC-Butner is attributable to a combination of a lack of space (or, in particular, beds) at FMC-Butner, or any other suitable facility, and a lack of staff. Thus, whereas BOP previously transferred individuals to medical centers under Section 4241 within 30 to 60 days, since the COVID pandemic, the average wait time for transfer of a prisoner under this Section is approximately 8 months. For that reason, BOP has been estimating that Defendant, whose Competency Order issued in July 2022, would be transferred to FMC-Butner in approximately March 2023. However, Dr. Boutwell explained that BOP recently opened and staffed a new facility which will expand availability for patients and will likely result in Defendant being transferred in February 2023, rather than March 2023.

As Dr. Boutwell explained, Defendant is on a waitlist, as he has been since July 2022, and he will be transferred when he reaches the top of the list. Defendant does not present any of the extreme symptoms or critical conditions that typically warrant expediting an individual's transfer, absent a Court order requiring expedition.

Counsel for Defendant pointed out that Defendant has been incarcerated for more than twenty-four months at this point. According to his presentence investigation report, the applicable Federal Sentencing Guidelines range applicable to Defendant is 51-63 months.

However, according to Defendant's counsel, Defendant may qualify for a reduced sentence and guidelines range based on various factors. Defendant has been unable to proceed to sentencing due to the Court's incompetency finding.

### III. 18 U.S.C. § 4241 AND APPLICABLE LAW

Upon a finding of incompetence to continue in proceedings against a criminal defendant, a court must commit the defendant to the custody of the Attorney General for a period not to exceed four months to evaluate whether the defendant may be restored to competency. *See* 18 U.S.C. § 4241(d)(1). Such commitment is mandatory. *See United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990).

Congress enacted Section 4241 in response to the due process concerns identified by the Supreme Court in *Jackson v. Indiana*, 406 U.S. 715, 731 (1972). *See United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022) (stating same). In *Jackson*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits a State from confining a defendant for an indefinite period simply because he is not competent to stand trial. 406 U.S. at 731. That case involved a defendant who was committed and confined to the State's Department of Health for three-and-a-half years without any indication that his competency could be restored. *Id*. at 738-39. The Court held that such indefinite confinement violated the defendant's due process rights. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id*. at 738. Thus, a person committed "solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id*.

In the Motion, Defendant argues that the four-month time limit provided in Section 4241(d) includes time spent confined pre-hospitalization and that, in any event, the delay in the instant case violates the Court's Competency Order and Defendant's due process rights.

To date, the only United States Court of Appeals to address these issues appears to be the Ninth Circuit in *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022). In *Donnelly*, the Court found that the four-month time limit in Section 4241(d)(1) applies only to the period of hospitalization, and thus begins to run when the defendant is hospitalized. *Id*. At least one court in this District has addressed this particular issue and agreed with the Ninth Circuit's conclusion in *Donnelly*. In *United States vs. Miguel Gutierrez Diaz*, No. 21-cr-20151 (S.D. Fla., Nov. 21, 2022), Judge Altman addressed the issue of whether pre-hospitalization delay violates Section 4241(d)(1) in the context of a motion to dismiss the indictment. Judge Altman denied the motion to dismiss and held that the "four-month time limit constrains the [Attorney General's] hospitalization of the inmate and doesn't set any limit on prehospitalization delay." [ECF No. 338-1 (Transcript of proceedings before Judge Altman) at p. 5). *But see United States v. Carter*, 583 F. Supp. 3d 94, 100 (D.D.C. 2022) (four-month time limit includes time spent in pre-hospitalization delay).

Neither Judge Altman nor the Ninth Circuit addressed whether there is or should be a specific limit on the amount of time a defendant may be confined between the issuance of a Section 4241 Order and transfer to a designated hospital or medical facility. However, in *Donnelly*, the court determined that the delay in that case—six months by the time the district court ruled on the delay issue and eight months by the time the Ninth Circuit ruled—fell beyond any constitutional reading of the statue. *Donnelly*, 41 F.4th at 1106. In particular, the court read *Jackson* to require the duration of any pre-hospitalization commitment to "bear

6

some reasonable relation" to its purpose, which in this case is identifying an appropriate treatment facility and arranging defendant's transportation. *Id*. Because the length of the defendant's confinement in that case exceeded the four-month maximum time period of hospitalization itself, the court concluded that whatever the outer limit of Section 4241(d)(1), the defendant's confinement exceeded it. *Id*. The court explained that "both [the defendant]'s liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize [the defendant] without further delay." *Id*. at 1107. Thus, the court remanded the case to the district court with instructions to order the Attorney General to hospitalize the defendant within seven days. *Id*. at 1108.

Numerous district courts across the country have considered the issue, in varying contexts, of how much pre-hospitalization delay is too much. These courts declined to identify a specific amount of time as the acceptable limit yet decided that whatever the outermost limit is, the Attorney General surpassed it in the particular cases before them. *See, e.g., United States v. Leusogi*, No. 2:21-CR-32-TS, 2022 WL 11154688, at *3 (D. Utah Oct. 19, 2022) (compelling Attorney General to transport defendant within seven days because pre-hospitalization delay of over four months exceeded permissible scope of statute); *United States v. Wazny*, No. 3:21-CR-247, 2022 WL 17363048, at *2 (M.D. Pa. Dec. 1, 2022) (compelling Attorney General to transfer defendant within 30 days after eight-month delay); *Carter*, 583 F. Supp. 3d at 100 (D.D.C. 2022) (dismissing indictment because pre-hospitalization delay of over four months exceeded scope of statute), *United States v. Smith*, 764 F. Supp. 2d 541, 545 (W.D.N.Y. 2011) (ordering defendant's release, unless he posed a danger to the community, where defendant was in solitary confinement for over ten weeks awaiting treatment); *see also United States v. Zapata-Herrera*, No. 14-CR-3639-GPC, 2015 WL 4878319, at *3 (S.D. Cal. Aug. 14, 2015)

7

(finding that delay of over 7 days was most likely unconstitutional). *But see United States v. Bravo-Cuevas*, No. CR2200076001PHXDWL, 2022 WL 3042916, at *2 (D. Ariz. Aug. 2, 2022) (dismissal of indictment not warranted where pre-hospitalization delay was a couple weeks less than four months).

One important consideration for courts determining whether a defendant's rights are violated is whether the defendant is already being detained for some reason other than their incompetency. *See United States v. Jones,* No. CR 19-27-BU-DLC, 2020 WL 7127321, at *2 (D. Mont. Dec. 4, 2020) (denying a defendant's due process challenge where the defendant was detained upon finding that he posed a threat to the community and risk of flight, notwithstanding a three-month delay in starting treatment), *United States v. Hatter*, No. 14-CR-1811-GPC, 2015 WL 1511015, at *2 (S.D. Cal. Mar. 19, 2015) (finding that an overriding legitimate interest was served by defendant's detention while awaiting treatment given defendant's danger to the community); *see also United States v. Gamarra,* 308 F. Supp. 3d 230, 233 (D.D.C. 2018) (six-month hospitalization pursuant to 4241(d)(1) was harmless error because defendant would have remained in pretrial detention "with the same level of deprivation to his liberty rights" if not being evaluated). *But see Carter*, 583 F. Supp. 3d at 104 (ordering dismissal of indictment due to pre-hospitalization delay but holding order in abeyance for one month for government to potentially initiate civil commitment proceedings, despite prior finding of pretrial detention due to danger to community).

With the foregoing in mind, the undersigned turns to the circumstances presented here and the issues raised in Defendant's Motion.

## IV.   DISCUSSION

Defendant seeks an order compelling BOP to act based on alleged violations of the Statute (18 U.S.C. § 4241(d)), violation of the Court's Competency Order, and violation of Defendant's due process rights.

With regard to the alleged violation of the Statute, the undersigned finds that the plain language of the text of Section 4241(d)(1) indicates that the four-month time limit set out in the Statute applies only to the period of hospitalization and begins to run once the defendant has been hospitalized. On this point, the statute is not ambiguous. Therefore, the pre-hospitalization delay in this case does not violate Section 4241(d)(1). [2]

In addition, the Court's Competency Order did not set a specific time limit within which BOP or the Attorney General must transfer Defendant to a medical facility for hospitalization and treatment. Therefore, the undersigned finds the pre-hospitalization delay does not violate the terms of the Competency Order.

Finally, Defendant has not articulated any basis for a finding that BOP has violated his due process or other Constitutional rights. Although Defendant has not identified a specific statutory requirement or a Court order violated by BOP, the undersigned has considered the impact the delay has on Defendant and BOP's conduct and reasons cited for the delay.

The undersigned recognizes that, as discussed above, Defendant is already being held in pretrial detention [ECF No. 4], and, as such, this case is different from those in which the

---

[2] On this, the undersigned disagrees with the Ninth Circuit's decision in *Donnelly*, in which the Ninth Circuit found a violation of the statute based on pre-hospitalization delay after acknowledging that the statute's four-month time limit only applies to the period of hospitalization.

only basis for holding the defendant was incompetency. It is also not apparent that Defendant's incarceration in this case has exceeded or neared the applicable Sentencing Guidelines range. Nevertheless, Defendant has been precluded from proceeding to sentencing due to the incompetency finding. Defendant is indisputably in need of treatment and is being held in a facility where he cannot receive the treatment he needs. Additionally, the record reflects Defendant's competency was previously restored after treatment in a different case, and, therefore, Defendant may very well be capable of competency restoration with the proper treatment and medications, such that he may be able to proceed with his sentencing and other court proceedings without further delay. That will not happen as long as he remains at FDC-Miami.

On the other hand, based on representations from BOP and the United States, it does not appear the delay is the result of wrongdoing, indifference, or even neglect on the part of BOP with regard to Defendant, in particular, but, instead, appears to be the result of circumstances presently beyond BOP's control. BOP's representative, Dr. Boutwell, explained that BOP is working diligently to rectify the situation and, although making some progress, Defendant will not see a significant benefit from that progress.

At this point—five months after the Competency Order—the delay is excessive and certainly troubling. However, under the circumstances, it does not appear the Government's behavior here is so egregious or outrageous "that it may fairly be said to shock the contemporary conscience[,]" such that it rises to the level of a due process violation. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998). Therefore, the undersigned finds Defendant has not demonstrated a due process violation by BOP.

Accordingly, absent a violation of a statute, Court Order, or Constitutional rights, Defendant has failed to set forth a basis for the equitable relief sought, and the Motion to Compel should be denied.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Defendant's Motion to Compel [ECF No. 287] be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, Chief United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this 27th day of December 2022.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record